ERIC J. LUNDELL, District Attorney St. Croix County
On behalf of the Village of Woodville you have asked whether sections 946.12 and 946.13 (1)(a) and (b), Stats., prohibit either of the following situations:
 1. A village board member participates in a village application procedure for a community development block grant (CDBG) and then later as an individual applies for and receives a grant or a loan from that CDBG for residential improvements. In regard to the latter, the board member did not participate in board approval of individual application.
 2. A village board member who privately is a contractor enters into a contract with the recipient of a CDBG grant or loan to make the improvements on the recipient's residence.
Under Woodville's CDBG program, private homeowners can obtain an interest free loan for up to $8,000 for residential improvements. The loans are funded by federal money funneled through the state to the village.
To be eligible for a loan, a resident must meet certain objective criteria that are based on figures furnished by the State Department of Development. The CDBG project director reviews the loan request to assess the eligibility of the applicant.
The director visits the applicant's residence to review the proposed work, to prepare a description of the work and to place priorities on the elements of the application. The director presents the application and the work write-up to the village board for approval. *Page 279 
If the application is approved, the resident obtains bids from contractors approved by the board and selects the contractor with the low bid, unless the board approves a contractor with a higher bid. The resident signs the mortgage and mortgage note, to which the village is a party.
The village board has various powers throughout the program. Any program criterion can be changed by a majority vote of the board, which serves as the final decision-making body for all criteria on project funding. Disputes between applicants and contractors must be arbitrated by the board. The project director and the board determine whether rehabilitation of a project is financially feasible and therefore eligible for a loan. The project director and the board develop criteria for approving contractors, who are hired by the applicant with the approval of the project director. Applicants are to be served on a first come, first serve basis, except that the board can move someone to the top of the list if it can document why such action was taken. Although deferred loans would normally not be for amounts in excess of $8,000, the board can review applications on a case-by-case basis and approve loans for amounts greater than $8,000 as long as there is collateral to secure the loan. In determining the rehabilitation work to be done, each case is judged by the board on a case-by-case basis.
In the process for granting a deferred loan, the board makes the final determination of the eligibility of the applicant, verifies that the work write-up conforms with includable costs, determines the amount of a rehabilitation deferred loan or interest subsidy for which the applicant is eligible and notifies the project director of loan approval or disapproval. If the loan is denied, the applicant may come before the board for an appeal.
Although the applicant selects the contractor, the selection must be made from the board's approved list of pre-qualified contractors. The applicant must hire the contractor who submits the low bid, unless the board allows him to take the second lowest bid. If the board decides that the low bid is valid, the applicant must pay the difference if he hires someone else. If the bids are over the $8,000 loan limit, the matter is submitted to the board for a recommendation of what to do.
The portions of section 946.13 relevant to your questions provide: *Page 280 
 Private interest in public contract prohibited. (1) Any public officer or public employe who does any of the following is guilty of a Class E felony:
 (a) In his private capacity, negotiates or bids for or enters into a contract in which he has a private pecuniary interest, direct or indirect, if at the same time he is authorized or required by law to participate in his capacity as such officer or employe in the making of that contract or to perform in regard to that contract some official function requiring the exercise of discretion on his part; or
 (b) In his capacity as such officer or employe, participates in the making of a contract in which he has a private pecuniary interest, direct or indirect, or performs in regard to that contract some function requiring the exercise of discretion on his part.
(2) Subsection (1) does not apply to the following:
 (a) Contracts in which any single public officer or employe is privately interested which do not involve receipts and disbursements by the state or its political subdivision aggregating more than $5,000 in any year.
It is my opinion that the village board member in your first question would be violating section 946.13 (1)(a) when he obtains a community development block grant loan approved by the board of which he is a member. The three elements of section 946.13 (1)(a) are: "(1) a direct or indirect private pecuniary interest in a public contract; (2) negotiating, bidding or entering into the contract in a private capacity; and (3) being authorized or required to participate in the making of the contract or to perform some act with regard to the contract in an official capacity." See 75 Op. Att'y Gen. 173 (1986)
All three elements would be satisfied in this case. The board member has a direct pecuniary interest in the loan he is obtaining. He enters into a contract with the village when he obtains the loan. Even though he did not participate in the approval of his loan, he had the authority as a board member to participate in the making of the contract. Also, as a board member, he has the authority to exercise various discretionary acts in regard to CDBG loans, of which his is one. Section 946.13
(1)(a) does not require that the official actually do anything in his official capacity in regard to a contract; it only requires that the official have the authority to *Page 281 
perform the various functions. In this case, the board member had the authority to act, which satisfies the elements of the statute as much as actual participation.
In regard to your second question, it is my opinion that a board member would violate section 946.13 (1) if he were hired as the contractor to perform the work for another CDBG loan applicant. As a member of the board, he has the authority to perform in regard to the contract between the applicant and the contractor official functions requiring the exercise of his discretion, such as participating in the arbitration of disputes between the applicant and the contractor, approving a bid that was higher than the low bid and deciding whether the CDBG program should pay for the excess of a bid over $8,000. Because he would have the authority as an official to exercise his discretion in regard to a contract he had entered and in which he had a private pecuniary interest, he would be violating section 946.13 (1)(a).
This opinion should not be read to mean that the acts discussed are the only ones that could constitute a violation of section946.13 (1) by the board member. The acts mentioned, however, are sufficient to show that the board member would be violating the statute if he obtained a CDBG loan or contracted to perform construction work for a CDBG applicant.
In answering these questions I have assumed that in his private capacity the board member would be receiving CDBG and other village funds aggregating in excess of $5,000 in a year. If that figure were not exceeded in the year, there would be no violation of section 946.13. See sec. 946.13 (2)(a), Stats.
Finally, it must be kept in mind that section 946.13 is a strict liability statute that does not require an official to have criminal intent or a corrupt motive. State v. Stoehr,134 Wis.2d 66, 76, 78-79, 396 N.W.2d 177 (1986). The statute "is directed not at corruption but at conduct presenting an opportunity for corruption." Stoehr, 134 Wis.2d at 79. The Woodville village board has much discretionary power in carrying out the CDBG program established in that village and the power that lies in the board provides an opportunity for corruption if an official were so disposed. Because of that possibility, section 946.13 prevents the village board member from obtaining a CDBG loan under the program.
DJH:SWK *Page 282